WILLIAM McLELLAN *versus* RANDOLPH A. L. CODMAN.

Where the return of an officer sets forth, that by virtue of his precept he had made diligent search for the property of the debtor, and could find none, the return would be false, unless he had the execution in his hands before the return day; for he could do nothing *by virtue of it*, unless it was in force at the time. And therefore where an officer makes such return on an execution, under a date subsequent to the return day, it must be considered, that the execution was *in his hands seasonably*, and that his return of his doings had reference to the time when he could lawfully act by virtue of it.

In *scire facias* against the indorser of a writ, the inability of the execution debtor to satisfy the execution, where that fact is relied upon to sustain the process, should be directly averred. If, however, this has not been done, but the plaintiff has averred, that his execution for costs has not been satisfied, and has recited the officer's return thereon, showing that the want of satisfaction arose from want of ability in the debtor to discharge the same, and has alleged, that for want of sufficient property of the debtor to satisfy the execution, the indorser became liable, the declaration will not, for that cause, be bad on general demurrer, under the provisions of Rev. st. *c.* 115 § 9.

McLELLAN sued out his writ of *scire facias*, of which a copy follows.

Whereas William McLellan of Portland, in the County of Cumberland, Merchant, by the consideration of our justices of our Supreme Judicial Court holden at Portland within and for our county of Cumberland, on the second Tuesday of April, A. D. 1838, recovered judgment against Benjamin Weymouth of Portland, Gentleman, for the sum of thirty-four dollars and seventy-eight cents costs of suit, as to us appears of record, by him about said suit in that behalf expended, whereof the said Benjamin Weymouth is convict as to us appears of record, and although judgment be thereof rendered, yet the said execution for said costs doth yet remain to be paid, although the same issued from the office of the Clerk of said Court on the 12th day of May, A. D. 1838, and said execution was duly delivered into the hands of Royal Lincoln, who was then a deputy sheriff of said county and for more than three months thereafter, and at the time of the return on said writ, who made a return thereon in the words following and figures to

wit, " Cumberland ss. June 22, A. D. 1839. By virtue of the within execution, I have made diligent search after the property of the within named Weymouth, and not having found any estate, real or personal, belonging to said Weymouth, and the said Weymouth not being within my precinct, I hereby return this execution wholly unsatisfied.

" Royal Lincoln, Deputy Sheriff."

And the same execution remains wholly unsatisfied, and the plaintiff avers that Randolph A. L. Codman indorsed the original writ whereon said judgment was rendered by his christian and surname, as the plaintiff's attorney according to the statute ; whereby and for want of finding property of said Benjamin Weymouth to satisfy said execution the said Codman became liable to pay said costs to the plaintiff, who was defendant in said original writ. Wherefore the said William McLellan has made application to us to provide a remedy for him in that behalf. Now to the end that justice be done : We command you to attach the goods and estate of Randolph A. L. Codman of Portland, in the County of Cumberland, Counsellor at Law, to the value of one hundred dollars, and summon the said Codman, if he may be found in your precinct, and make known unto him, that he be before our justices of our Supreme Judicial Court next to be holden within and for our County of Cumberland on the Tuesday next but one preceding the last Tuesday of April, to show cause if any he have why the said William McLellan ought not to have execution against him the said Codman for his costs aforesaid, and further to do and receive that which our said Court shall then consider. And then and there have you this writ with your doings. Hereof fail not, &c.

To this the defendant demurred generally, and the demurrer was joined.

*Codman & Fox* argued in support of the demurrer, contending that the only evidence of inability or avoidance must come from the return of the officer. *Ruggles* v. *Ives,* 6 Mass. R. 494 ; *Wilson* v. *Chase,* 20 Maine R. 389. The return on an execution by an officer, after the return day, is

wholly void. *Prescott* v. *Wright*, 6 Mass. R. 20. Here it does not appear, that the officer ever had the execution in his hands during the life of it. The search might as well be made on a dead execution, as on a live one, and amounts to nothing.

*Fessenden, Deblois* and *Fessenden* argued for the plaintiff. They cited *Chase* v. *Gilman*, 15 Maine R. 64; *Harkness* v. *Farley*, 2 Fairf. 491; *Stevens* v. *Bigelow*, 12 Mass. R. 434; *McGee* v. *Barber*, 14 Pick 212; *Welch* v. *Jay*, 13 Pick. 477.

The opinion of the Court was drawn up by

WHITMAN C. J.—The returns of ministerial officers, of their doings, by virtue of precepts entrusted to them, should be explicit; and leave as little as possible to intendment. The date of the return, in this case, of the officer's doings on the execution, being long after it had ceased to be in force, created some doubt whether it was actually in his hands before the day on which it was made returnable. But the returns of sheriffs and their deputies must be taken to be true; and the return set forth is, that, by virtue of the precept, he, the officer, had made dilligent search for property, &c. Unless he had the execution in his hands before the return day, his return would be false; for he could do nothing *by virtue* of it, unless it was at the time in force; after that it would be in his hands as a dead letter. We must, therefore, conclude, that the execution was in his hands seasonably; and that his return of his doings had reference to the time, when he could lawfully act by virtue of it. In such case it must be considered that there is evidence showing, that the person, against whom the execution was issued, was not of sufficient ability to pay the amount due on it. This satisfies one of the alternatives in the statute giving a right to sustain this process.

But it is contended that the *scire facias* is bad, inasmuch as it does not directly, and in terms, aver the inability of Weymouth, the execution debtor, to satisfy the execution. It would undoubtedly have been regular so to have averred. It was a fact to be proved; and therefore should in substance at

least have been alleged. The demurrer, however, of the defendant is general, under which errors in matter of form merely are not to be noticed, and the statute, ch. 115, § 9, is very broad. It provides, " that no summons, writ, declaration, plea, process, judgment, or other proceedings in courts of justice, shall be abated, arrested or reversed for any kind of circumstantial errors or mistakes, when the person and case may be rightly understood." Is there any difficulty in this case in understanding the *gravamen* relied upon ? The plaintiff has averred, that his execution for costs has not been satisfied, and recites the officer's return thereon, showing that the want of satisfaction arose from the want of ability in the debtor to discharge the same. The plaintiff then avers, that, for want of sufficient property of the debtor's to satisfy the execution, the said Codman became liable, &c. From these averments and recitals we cannot see why the case may not be rightly understood.

The *scire facias,* and matters and things therein contained, adjudged good.